# Illinois Official Reports

## Appellate Court

---

### *People v. O'Neal*, 2016 IL App (1st) 132284

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAUAN O'NEAL, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-2284 |
| Filed | September 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-16711; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Reversed in part, affirmed in part, and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Robert N. Melching, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John Walters, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justice Cobbs concurred in the judgment and opinion.<br>Justice McBride specially concurred, with opinion. |

**OPINION**

¶ 1　　During a street party on May 29, 2010, on a portion of South Laflin Street that served as an approximate boundary between rival Chicago street gangs, a van drove the wrong way down the one-way street toward the group of people gathered at the party. Many people at the party noticed the slow-moving van and began to shout. Defendant Jauan O'Neal, who claimed he was acting as "security" for the party, fired multiple shots at the van, claiming that he believed it was being driven by rival gang members and that he was acting in self-defense. At the time defendant fired the shots, his friend Darius Murphy was sitting in a car across the street. One of the bullets defendant fired at the van struck Murphy in the head, killing him.

¶ 2　　The State charged defendant with, among other things, three different forms of first degree murder—intentional murder, strong-probability murder, and felony murder based on the predicate felony of aggravated discharge of a firearm. The jury was instructed on self-defense as to all counts. On the charges of intentional and strong-probability murder, the jury was also instructed as to second degree murder, based on the mitigating factor of unreasonable self-defense.

¶ 3　　The jury found defendant guilty of first degree murder based on felony murder. On the intentional and strong-probability murder counts, the jury reduced the conviction to second degree murder based on the mitigating factor of unreasonable self-defense. The jury also convicted defendant of aggravated discharge of a firearm.

¶ 4　　We reverse the felony murder conviction and remand for resentencing on the second degree murder conviction. The felony murder conviction was predicated on the offense of aggravated discharge of a firearm, *i.e.*, defendant's act of shooting at the van. But that was the same act causing Murphy's death—an act that the jury found warranted only a second degree murder conviction based on unreasonable self-defense. Allowing defendant's felony murder conviction to stand would effectively license the State to nullify a second degree murder verdict in any case where a defendant shoots at one individual under the subjective but unreasonable belief that he was acting in self-defense but misses and mistakenly kills another person. The State cannot be permitted to use felony murder to obtain a first degree murder conviction that it otherwise could not secure. We reverse the felony murder conviction, affirm defendant's other convictions for second degree murder and aggravated discharge of a firearm, and remand for resentencing.

¶ 5　　　　　　　　　　　　　**I. BACKGROUND**

¶ 6　　On May 29, 2010, a group of people, including defendant, were drinking and smoking marijuana near the intersection of 51st Street and South Laflin Street in Chicago. The decedent, defendant's friend Darius Murphy, was sitting in a parked car on the opposite side of the street. Many of the people at the party, including defendant, were members of the Black P. Stone gang, which was involved in a conflict with the La Raza gang.

¶ 7　　Defendant was acting as "security" for the party that night and was carrying a 9-millimeter handgun. Murphy's brother Deandre and his cousin Nikevis testified that they understood defendant's responsibility as the "security" was to protect the people at the party from rival gangs. None of the witnesses at trial testified that they saw other partygoers carrying firearms.

¶ 8    During the party, a van with tinted windows approached, traveling the wrong way down Laflin Street. People at the party yelled, "on that van" or "on that car," and defendant fired his gun at the van. After defendant fired, the van drove away. People then realized that Murphy had been shot in the head.

¶ 9    The number of shots defendant fired was unclear. Deandre testified that he heard 6 or 7 shots, Nikevis testified that he heard 4 or 5, and Derreon, Murphy's other brother, testified that he heard 8 or 10. The police found five cartridge cases and one bullet jacket on the scene, as well as a bullet core in Murphy's head.

¶ 10    There was also conflicting evidence regarding who was in the van and whether any of its occupants were armed. Deandre and Nikevis both testified that there was only one 40-year-old Hispanic man driving the van. They did not see anyone in the van with a weapon. Samuel Walton, a defense witness, testified that there were four Hispanic men inside the van, including a passenger who was holding a gun out of the window. Andre Lacour, another defense witness, also saw multiple people inside the van, but he could not say how many. Andre testified that he saw the people in the van "arguing or fumbling with something." Terry McCauley, the final defense witness, testified that there was one passenger in the van in the front seat who raised something that Terry thought may have been a gun. Terry said that he could not be certain because it was dark and the van's windows were tinted.

¶ 11    After defendant's arrest, he was interrogated by Detective Scott Reiff. Reiff testified that defendant admitted firing at the van. The first time Reiff questioned defendant, he said that there were three Hispanic men in the van, one of whom was holding a gun out the front passenger window and flashing gang signs. The second time Reiff questioned defendant, he said that there was only one passenger in the van and that he did not see a gun, only a flash.

¶ 12    At the close of the State's case, defendant moved for a directed finding on the felony murder charge, arguing that the same act that formed the basis of the underlying felony of aggravated discharge of a firearm, *i.e.*, shooting at the van, was also the act that caused Murphy's death. Defense counsel argued, "If I'm shooting at someone, intending to kill them, and I miss and kill the person behind [him], that's straight up murder. That's not felony murder. This is essentially that case." The trial court denied the motion, noting that "the offense of aggravated discharge of a firearm currently and has been for the last couple of years the main predicate underlying offense in these various shootings that have taken place in the city of Chicago."

¶ 13    During the jury instruction conference, defense counsel proposed instructions that would tell the jury that it had to conclude that, with respect to the felony murder charge, the jury had to find both that the acts forming the basis of the predicate felony were not inherent in the acts that caused Murphy's death and that defendant's "felonious purpose" when committing the predicate felony was different from his felonious purpose when committing the murder. The court denied the instructions on the basis that they would confuse the jury and the instructions were not taken from the Illinois Pattern Jury Instructions, Criminal (4th ed. 2000).

¶ 14    The State proposed an instruction informing the jury that an individual could not be justified in the use of force if he was committing the offense of aggravated discharge of a firearm. Defense counsel objected to the instruction, but the trial court allowed it.

¶ 15    The jury was instructed as to first degree intentional murder, first degree strong-probability murder, first degree felony murder, self-defense, second degree murder, and aggravated discharge of a firearm. With respect to the felony murder charge, the jury was not instructed to

consider whether the mitigating factor for second degree murder (an unreasonable belief in the need for self-defense) was present.

¶ 16    During the jury's deliberations, the jurors sent out a note asking, "What is the definition of justification under the law?" Defense counsel pointed out that the jurors had already been instructed on the definition of justification. The court responded, "You have already been given a definition for the justified use of force in your instruction packet."

¶ 17    The jury found defendant guilty of felony murder, second degree murder, and aggravated discharge of a firearm. The jury further found that defendant personally discharged the firearm that proximately caused Murphy's death.

¶ 18    In his motion for a new trial, defendant argued that the felony murder count should be vacated because the "act constituting aggravated discharge of a firearm [was] precisely the same as [the] act constituting second degree murder." Defendant argued:

> "The jury found [defendant] guilty of second degree murder under a theory of transferred intent. By doing so [it] determined that, when he shot *** Mr. Murphy, [defendant] was attempting to commit second degree murder of an occupant of the van. Therefore, his act may only form the basis for a conviction of second degree murder."

The trial court was "not persuaded by the Defense's argument that second degree murder rules in this case." The court stated, "There was a transferred intent scenario here, and the felony murder count is the most serious count here, and that's the count that he will be sentenced on." The trial court "merged" the other counts into the felony murder count and sentenced defendant to 70 years' incarceration: 40 years for the murder itself and another 30 years pursuant to the statutory firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2010)).

¶ 19    Defendant appeals, raising six issues: (1) that his felony murder conviction predicated on the offense of aggravated discharge of a firearm must be reversed because the act forming the basis of the aggravated discharge charge (shooting at the van) was inherent in the shooting of Murphy, (2) that he is entitled to a new trial because the jury's verdicts of guilty for felony murder and second degree murder were legally inconsistent, (3) that the trial court erred in instructing the jury that defendant could not be justified in using force if he committed aggravated discharge of a firearm and failing to instruct the jury on second degree murder with respect to the felony murder charge, (4) that the trial court erred in refusing to instruct the jury on the independent felonious purpose doctrine, (5) that his sentence is unconstitutional and excessive, and (6) his mittimus should be corrected to reflect additional credit for time he served in custody prior to sentencing.

¶ 20                                    II. ANALYSIS
¶ 21                                  A. Felony Murder
¶ 22    Defendant first argues that his conviction for first degree murder based on a felony murder theory must be reversed. For the reasons that follow, we agree and reverse the felony murder conviction outright.

¶ 23    There are three types of first degree murder in Illinois: (1) intentional murder, *i.e.*, where the defendant "intends to kill or do great bodily harm" or "knows that [his] acts will cause death" (720 ILCS 5/9-1(a)(1) (West 2010)); (2) strong-probability murder, *i.e.*, where the defendant knows that his acts "create a strong probability of death or great bodily harm" (720 ILCS 5/9-1(a)(2) (West 2010)); and (3) felony murder, *i.e.*, where the defendant commits or

attempts to commit a forcible felony and, during the commission of that felony, a death occurs (720 ILCS 5/9-1(a)(3) (West 2010)). The felony murder statute states that the predicate forcible felony must be one "other than second degree murder." *Id.*

¶ 24    Second degree murder occurs when the defendant commits either intentional, knowing, or strong-probability first degree murder and one of two mitigating factors is present: (1) the defendant acted under a sudden and intense passion resulting from serious provocation by the victim (720 ILCS 5/9-2(a)(1) (West 2010)) or (2) the defendant subjectively believed that he was acting in self-defense, but his belief was unreasonable (720 ILCS 5/9-2(a)(2) (West 2010)). See *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995); *People v. Newbern*, 219 Ill. App. 3d 333, 353 (1991); *People v. Lefler*, 2016 IL App (3d) 140293, ¶ 19 (all standing for proposition that conviction for second degree murder is conviction for first degree murder plus finding that one of two listed mitigating factors is present). The second mitigating factor, which has been described as "imperfect self-defense" (*Jeffries*, 164 Ill. 2d at 113), is the factor at issue in this case.

¶ 25    But as we have already noted, unlike intentional and strong-probability murders, the felony murder statute requires that the predicate forcible felony must be one "other than second degree murder." 720 ILCS 5/9-1(a)(3) (West 2010). So while a finding of a mitigating factor such as imperfect self-defense will serve to reduce a charge of first degree intentional or strong-probability murder to a second degree murder conviction, the "defense of second degree murder is not available to a charge of felony murder." *People v. Morgan*, 197 Ill. 2d 404, 452 (2001). That is because felony murder is not concerned with the defendant's intent to commit murder. *People v. Klebanowski*, 221 Ill. 2d 538, 552 (2006). Rather, the purpose of the felony murder statute is to deter the commission of the predicate forcible felony by holding the wrongdoer liable for any foreseeable death that results from the commission of that forcible felony. See *People v. Belk*, 203 Ill. 2d 187, 192 (2003) ("The purpose behind the felony murder statute is to limit the violence that accompanies the commission of forcible felonies, so that anyone engaged in such violence will be automatically subject to a murder prosecution should someone be killed during the commission of a forcible felony."); *People v. Davison*, 236 Ill. 2d 232, 239 (2010) (citing *Belk* for same proposition).

¶ 26    In this case, defendant was charged with first degree intentional and strong-probability murder, but the jury reduced those charges to second degree murder based on defendant's unreasonable belief that he was acting in self-defense. The State also charged defendant with and convicted him of felony murder, also a first degree murder. The forcible felony used as the predicate felony for defendant's felony murder charge in this case was aggravated discharge of a firearm, which occurs when a defendant knowingly or intentionally discharges a firearm "in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." 720 ILCS 5/24-1.2(a)(2) (West 2010).[1]

¶ 27    Thus, the jury was able to credit defendant's claim of imperfect self-defense, while simultaneously finding defendant guilty of first degree murder based on the State's felony murder charge.

¶ 28    Defendant argues that, in this case, aggravated discharge of a firearm could not be used as the predicate felony for his felony murder conviction because it was inherent in the act causing

---

[1]There are several other acts constituting aggravated discharge of a firearm (see 720 ILCS 5/24-1.2(a) (West 2010)), but for purposes of this case, this is the only relevant provision.

Murphy's death. He notes that one of the shots he fired at the van was the same shot that struck Murphy. And because the jury found that the killing was mitigated by imperfect self-defense when it convicted him of second degree murder, defendant argues that he cannot also stand convicted of first degree murder for the same conduct.

¶ 29     Whether a felony is a proper predicate felony for felony murder is a question of law that we review *de novo*. *Davison*, 236 Ill. 2d at 239.

¶ 30     Defendant's argument relies on *Morgan*, 197 Ill. 2d 404, which held that an act that is inherent in a murder cannot serve as the predicate felony for felony murder. In *Morgan*, the defendant was charged with the murders of his grandparents. *Id.* at 410. He was convicted of first degree murder for shooting his grandmother but was convicted of serious-provocation second degree murder for shooting his grandfather. *Id.* Before trial, the defendant sought to dismiss the counts of felony murder predicated on the offenses of aggravated battery and aggravated discharge of a firearm, arguing that those predicate felonies "were not independent of the murders themselves." *Id.* at 444.

¶ 31     Our supreme court agreed that those counts should have been dismissed because "[t]he forcible felonies underlying the charges of felony murder *** were acts that were inherent in, and arose out of, the fatal shootings." *Id.* at 447. The court held that, "[b]ecause the predicate felonies *** arose from and were inherent in the murders of [the victims], the jury should not have been instructed that [the defendant] could be convicted of first degree murder on a felony-murder theory." *Id.* at 447-48. The court reasoned that, because every shooting involves conduct constituting aggravated discharge of a firearm, "all fatal shootings could be charged as felony murder" and "[t]he result could be to effectively eliminate the second degree murder statute." (Internal quotation marks omitted.) *Id.* at 447.

¶ 32     Two years later, in *People v. Pelt*, 207 Ill. 2d 434, 442 (2003), the court held that the State could not charge the defendant with felony murder predicated on aggravated battery in a case where the defendant threw an infant against a dresser and killed the child. The court held that "the act of throwing the infant forms the basis of defendant's aggravated battery conviction, but it is also the same act underlying the killing. Therefore, as in *Morgan*, it is difficult to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed the infant." *Id.*

¶ 33     The court also reemphasized its "apprehension," previously articulated in *Morgan*, in permitting the State to avoid proving a defendant's intent via a felony murder charge. *Id.* Specifically, the court noted that the defendant had been charged with intentional murder, but the jury "rejected [that] charge and instead found [the] defendant guilty of aggravated battery." *Id.* The court stressed that its "holding ensure[d] that [a] defendant will not be punished as a murderer where the State failed in proving to the jury that a knowing murder occurred." *Id.*

¶ 34     The supreme court next took up this issue in *People v. Davis*, 213 Ill. 2d 459, 474 (2004), where the court held that the offense of mob action was a proper predicate felony because defendant's acts were not inherent in the death of a victim severely beaten by a group of 10 to 20 people. The court reasoned that "the same evidence was not used to prove both the predicate felony, mob action, and the murder." *Id.* The testimony varied as to how many times defendant struck the victim with a stick, but it was "undisputed" that as many as 10 to 20 other people beat him severely. *Id.* Regardless, to convict defendant of mob action, the State only needed to prove that the defendant acted in concert with others to disturb the peace through the use of force or violence and that someone within that group violently inflicted injury; "it was not

necessary to prove that defendant struck [the victim], much less performed the act that caused the killing." *Id.* Likewise, it was clear that the defendant's participation on the mob action "involved conduct with a felonious purpose other than the conduct which killed [the victim]." *Id.*

¶ 35 The court again acknowledged its "concern that the State will effectively eliminate second degree murder and will avoid the burden of proving an intentional and knowing killing in first degree murder cases by often charging felony murder because certain predicate felonies tend to accompany all murders." *Id.* at 471. But the court did not find the concern present. *Id.* at 474-75.

¶ 36 The supreme court most recently considered this issue in *Davison*, 236 Ill. 2d at 243, where the supreme court again determined whether mob action could serve as a predicate felony for a felony murder charge under those facts. The court held that, under the facts of that case, mob action was a proper predicate felony for felony murder, where the defendant committed several distinct acts toward the victim. The court first noted that, "[a]s in *Davis*, evidence apart from the actual murder supported defendant's conviction for mob action." *Id.* at 242. The defendant in *Davison* had agreed to help one of his co-offenders, who had quarreled over money with the victim, to locate and attack the victim. *Id.* The defendant and his friends searched for the victim, found him, and pursued him on foot and by car. *Id.* The court detailed defendant's distinct acts:

"Defendant admitted he threw a bat at the victim during the pursuit. Defendant also engaged in some sort of physical interaction with the victim when he first caught up to the victim during the pursuit, causing the victim to fall and drop a knife. Defendant stabbed the victim only toward the end of the pursuit. After stabbing the victim, defendant retreated and watched his three co-offenders repeatedly stab and hit the victim with a bat. This evidence supports a conclusion that defendant acted with other individuals to use force or violence to disturb the public peace, *completing the predicate felony of mob action, before the end of the aggression that eventually resulted in the victim's death*." (Emphasis added.) *Id.*

¶ 37 The supreme court held that defendant's conduct was not inherent in, nor arose out of, the murder itself, given that some of the defendant's actions—throwing the bat at him and physically attacking him—preceded the final attack resulting in death, and that "the victim died as the result of cumulative blood loss from the 20 stab wounds inflicted by defendant and his three co-offenders, rather than any particular wounds inflicted by defendant alone." *Id.* at 243. Emphasizing this latter point, the court cited *Davis* and *People v. Viser*, 62 Ill. 2d 568 (1975), for the proposition that "when there was no clear evidence the defendants caused the fatal injuries" during a group attack, it was proper to predicate felony murder charges on the defendant's participation in that group attack. *Davison*, 236 Ill. 2d at 243.

¶ 38 The supreme court further considered whether the defendant had an "independent felonious purpose"—an intent separate and apart from the murder itself—in committing the act of mob violence and found that he did, because the "defendant *** participated in the group pursuit and use of force against the victim" long before the events that ultimately led to the victim's death. *Id.*

¶ 39 In summarizing, the supreme court recognized that it analyzed two distinct questions—(1) whether the act was inherent in the murder itself, which could allow the State to avoid the burden of proving an intentional or knowing murder by charging felony murder and (2)

whether the defendant had a felonious purpose in committing the predicate felony that was independent of the murder itself. *Id.* The State asked the court to abandon the first principle and to adopt a test "that focuses solely on whether the defendant acted with a felonious purpose distinct from an intent to kill his victim, without considering whether the act underlying the predicate felony was inherent in the murder itself." *Id.* But the supreme court refused to do so, noting that in all of its case law (*Morgan*, *Pelt*, and *Davis*), it had considered both principles and would continue to do so:

> "[T]his court has consistently recognized that the predicate felony underlying a charge of felony murder must have an independent felonious purpose. [Citations.] In addition, we also carefully considered whether the State improperly used felony-murder charges to avoid the burden of proving an intentional or knowing murder. [Citations.] Despite the State's invitation to abandon the latter consideration, we continue to adhere to these principles." *Id.* at 244.

¶ 40 Thus, in deciding this issue, we must consider two separate questions—whether defendant's act of shooting at the van was inherent in the death of Darius Murphy, such that permitting a felony murder charge would allow the State to circumvent the second degree murder statute, and whether defendant's felonious purpose in discharging the firearm was independent of the murder itself. If we find that defendant prevails on either of these questions, the felony murder conviction must be reversed. *Id.* In this case, we find that defendant prevails on both questions.

¶ 41                 1. Whether the Predicate Felony Was Inherent in the Murder

¶ 42 We agree with defendant that his act of discharging a firearm in the direction of the van—the predicate felony charged in the felony murder count—was inherent in the murder itself. It was, in fact, the only act committed by defendant—or anyone else—in this case. Defendant fired a cluster of shots at an oncoming van before it drove away. The State never made any attempt to differentiate among the various shots in the cluster; it never tried to prove that it was the first or third or fifth shot that caused Murphy's death. And the State has conceded throughout this case (including at oral argument) that every single shot defendant fired was aimed at, and intended for, the occupants of the van.

¶ 43 This case is unlike a more traditional case of felony murder where, for example, a defendant commits a home invasion and the homeowner responds by shooting the defendant's accomplice or a defendant commits a bank robbery and the security guard accidentally shoots a bystander in the course of trying to stop the robbery or a defendant commits a felony and then kills someone in the course of his escape. Even with respect to the particular predicate felony at issue, this is not a case where the aggravated discharge of a firearm set in motion a course of events that later led to the victim's death. A perfect example of such a fact pattern is one of the cases cited by the State, *People v. Toney*, 337 Ill. App. 3d 122 (2003).

¶ 44 In *Toney*, the defendant and two codefendants, who were all members of the same gang, were driving when members of a rival gang threatened them and threw a bottle at their car. *Id.* at 127. The defendant let his codefendants out of the car, and they proceeded to open fire on the rival gang. *Id.* That initial volley of gunfire spawned a gunfight, where rival gang members returned fire, and several minutes after the shooting began, a bystander was struck with a bullet and killed. *Id.* at 135. Forensic testing of the bullet that killed the bystander showed that the bullet could not have been fired by the codefendants; "the victim *** could have been shot by

- 8 -

return gunfire" from the rival gang. *Id.* The court held that the defendant could properly be convicted of felony murder predicated on aggravated discharge of a firearm, stating, as "the defendant and his codefendants were not acting in self-defense and it was their criminal acts, including [codefendants] firing their guns in the direction of their rivals *** that set in motion conduct that eventually resulted in the death of [the victim]." *Id.*

¶ 45    Thus, though the State cites *Toney*, in fact that decision supports the more classic example of felony murder where an underlying felony—the initial gunfire—set in motion a course of events that later resulted in the death of an individual, in that case by someone else's gun. *Id.* at 135. See *People v. Dekens*, 182 Ill. 2d 247, 252 (1998) ("a charge of felony murder is appropriate" when "an intended victim mistakenly shoots and kills a bystander"). But in this case, there were no events set in motion by defendant's shooting of the gun. There was no return gunfire, nothing in the record to indicate that defendant's shots were preceded, or followed, by any felonious act whatsoever.

¶ 46    Indeed, by returning a verdict of guilty on first degree intentional and strong-probability murder (which it then reduced to second degree murder), and by making the enhancement finding that defendant discharged a weapon that resulted in Murphy's death, the jury made it clear that it found that a bullet from defendant's gun, not someone else's, killed Murphy. This case is thus distinguishable from supreme court precedent finding certain felonies to be appropriate predicates for felony murder where it was unclear whether defendant or someone else ultimately killed the victim. See *Davis*, 213 Ill. 2d at 475 ("it was not obvious which of the defendants caused the fatal blow to the victim, who died two weeks later from pancreatitis caused by severe abdominal injuries he received" during beating (internal quotation marks omitted)); *Davison*, 236 Ill. 2d at 243 (relying on *Davis* and *Viser*, 62 Ill. 2d at 568, as cases that permitted "felony-murder charges predicated on felonies involving the defendants' participation in fatal group attacks on the victims when there was no clear evidence the defendants caused the fatal injuries").

¶ 47    This case is also very different from *Davis* and *Davison* in the temporal sense that, in those cases, the underlying predicate conduct was removed in time from the ultimate death that occurred. In *Davis*, the defendant joined the mob after the beating had begun and stopped participating in the beating as it continued on. *Davis*, 213 Ill. 2d at 474. In *Davison*, the supreme court specifically found that the defendant's initial participation in the mob action (throwing a bat at the victim, initially disarming the victim of his knife, and stabbing defendant once) was completed "before the end of the aggression that eventually resulted in the victim's death." *Davison*, 236 Ill. 2d at 242. Here, in marked contrast, defendant unloaded a cluster of gunfire at the van, and the affair ended at that point, with the van having driven away. Defendant's acts were not completed before the end of the series of events that caused Murphy's death; his act was the *only* event, the direct and only cause of Murphy's death.

¶ 48    Likewise, the proof of defendant's discharge of a firearm did not require different proof than the events causing Murphy's death. *Cf. Davis*, 213 Ill. 2d at 474 ("the same evidence was not used to prove both the predicate felony, mob action, and the murder"); *Davison*, 236 Ill. 2d at 242 ("[a]s in *Davis*, evidence apart from the actual murder supported defendant's conviction for mob action"). The proof of defendant's aggravated discharge of a firearm was that he discharged a firearm in the direction of the van. That is exactly the same proof that the State used to support its intentional and strong-probability murder charges. Proof of the predicate felony and proof of the murder were one and the same.

¶ 49   This case is much more analogous to *Morgan*, where the defendant shot his grandfather with a gun and was charged with felony murder based on aggravated discharge—that is, discharging a firearm in the direction of his grandfather. In both *Morgan* and this case, the defendant shot a gun at someone, and the State used the discharge of the gun as a predicate felony for a felony murder charge. Although the shooting in *Morgan* occurred in close quarters, while this shooting occurred on a public street, we find no meaningful difference between this case and *Morgan* except for the fact that defendant here missed his intended target and accidentally killed his friend. We see no principled reason why the defendant in *Morgan* could avoid a felony murder conviction but defendant here cannot, simply because defendant—tragically—had bad aim.

¶ 50   The similarity to *Morgan* is especially striking because, as in *Morgan*, in this case the jury found that defendant shot at the van while under the unreasonable belief that he was acting in self-defense, *i.e.*, that defendant's conduct constituted second degree murder. The jury refused to convict defendant of first degree intentional or strong-probability murder, but because the felony murder statute does not permit such mitigating factors, the State was able to convict defendant of first degree murder anyway, for the exact same shooting at the exact same intended target. This case thus implicates our supreme court's "repeatedly expressed" view "that a felony-murder charge may, in effect, improperly allow the State to *** eliminate the offense of second degree murder *** because many murders are accompanied by certain predicate felonies." *Davison*, 236 Ill. 2d at 240 (citing *Davis*, 213 Ill. 2d at 471, citing *Morgan*, 197 Ill. 2d at 447); *Pelt*, 207 Ill. 2d at 441. This case presents a scenario where a felony murder charge allowed the State to effectively nullify a second degree murder verdict where it otherwise should have been available.

¶ 51   Our conclusion is further supported by two cases, cited by defendant, that dealt with the offense of armed violence predicated on aggravated discharge of a firearm: *People v. Alejos*, 97 Ill. 2d 502 (1983), and *People v. Drakeford*, 139 Ill. 2d 206 (1990). In *Alejos*, the supreme court considered whether a conviction for armed violence—which criminalized the commission of any felony while armed with a dangerous weapon (see Ill. Rev. Stat. 1979, ch. 38, ¶ 33A-1 *et seq.*)—could stand where the predicate felony for the conviction was voluntary manslaughter. *Alejos*, 97 Ill. 2d at 506. At the time, voluntary manslaughter, like the current second degree murder statute, applied to a killing committed in imperfect self-defense. *Id.* The Illinois Supreme Court held that voluntary manslaughter could not serve as a predicate felony for armed violence because armed violence was a crime designed to deter the use of weapons during felonies, but voluntary manslaughter, by definition, was "an unpremeditated crime." *Id.* The court reasoned:

> "It is *** difficult to understand the deterrent purpose the armed-violence provision could serve when applied to voluntary manslaughter. The general application of the armed-violence provision could be expected to discourage those who contemplate a felonious act beforehand from carrying a weapon when they set forth to perform the act, and from this perspective the provision serves a needed purpose. Yet no one who commits voluntary manslaughter intends in advance to take a life or employ deadly force; the only 'intent' of this sort that enters into the crime is the decision, arrived at without deliberation and in most cases instantaneously, to use force capable of killing. Before that decision is arrived at, the person who is guilty of voluntary manslaughter typically has no criminal intent whatever." *Id.* at 507.

¶ 52    In *Drakeford*, the Illinois Supreme Court expanded the reasoning it employed in *Alejos* to find that, under the facts of the case, the State could not use the offense of aggravated battery as a predicate felony for armed violence. *Drakeford*, 139 Ill. 2d at 213-14. The State had charged the defendant with first degree murder and armed violence predicated on aggravated battery. *Id.* At trial, the jury was instructed as to second degree murder based on imperfect self-defense, and it found defendant guilty of second degree murder and armed violence. *Id.* The court recognized that, in the abstract, aggravated battery would be a proper predicate felony to support a charge of armed violence. *Id.* at 213. But the court found that, even though the defendant's armed violence conviction was not literally predicated on second degree murder, the State had attempted to "circumvent[ ] *** *Alejos* by charging aggravated battery causing great bodily harm as the predicate felony." *Id.* The court noted that, by convicting the defendant of second degree murder, "the jury found that [the] defendant's conduct was unpremeditated, undeterrable, and caused by an actual but unreasonable belief that the circumstances required the use of deadly force in self-defense." *Id.* at 213-14. Because "the legislature did not intend for the armed violence statute to apply to conduct constituting second-degree murder," the court held that "the State [could] not utilize the armed violence statute to enhance a defendant's penalty if a defendant's act constitutes second degree murder." *Id.* at 213. In support of that holding, the court stressed that upholding the defendant's armed-violence conviction would effectively eliminate the second degree murder statute:

> "[I]f we were to hold that a defendant could be sentenced for armed violence predicated on aggravated battery where there was a simultaneous conviction for second degree murder arising out of the same act, we would render ineffective the second degree murder statute. To commit aggravated battery causing great bodily harm, a specific intent crime, the defendant must act 'intentionally' or 'knowingly.' [Citation.] Logically, any time a defendant commits second degree murder based on an unreasonable belief of self-defense, the defendant will also possess the intent or knowledge necessary for a conviction on aggravated battery causing great bodily harm. Thus, in the future, prosecutors will seek sentencing on the Class X armed violence predicated on aggravated battery conviction rather than on the Class 1 second degree murder conviction. This result would effectively nullify the second degree murder statute." *Id.* at 215-16.

¶ 53    The Illinois Supreme Court's concerns in *Alejos* and *Drakeford* apply with equal force in this case. Like armed violence, felony murder is an offense aimed at deterring violent criminal activity. See *Belk*, 203 Ill. 2d at 192 ("The purpose behind the felony-murder statute is to limit the violence that accompanies the commission of forcible felonies, so that anyone engaged in such violence will be automatically subject to a murder prosecution should someone be killed during the commission of a forcible felony."). But as the court in *Alejos* explained, second degree murder involves conduct that is generally *not* accompanied by a preexisting criminal intent. Here, the jury concluded that defendant acted under an unreasonable belief that he needed to use deadly force to defend himself. That is not an act capable of deterrence. The felony murder statute is not a proper fit with the facts of this case, based on the verdicts returned by the jury.

¶ 54    In sum, we hold that defendant's discharge of a firearm in the direction of the van's occupants was an act inherent in the killing of Darius Murphy. We also hold that permitting the State to convict defendant of felony murder under the facts of this case, and in light of the

jury's finding of imperfect self-defense, enabled the State to secure a first degree murder conviction it could not otherwise obtain, thereby bypassing the jury's verdict on second degree murder. Indeed, if we did not reverse this felony murder conviction, we would be creating a road map for the State to effectively nullify the second degree murder statute in any unintentional shooting of a bystander performed by a defendant acting in imperfect self-defense toward another, simply by the charging of felony murder. Because the Illinois Supreme Court has repeatedly refused to let such a result occur, defendant's felony murder conviction must be reversed.

¶ 55                                   2. Independent Felonious Purpose

¶ 56    Under the supreme court's most recent discussion of felony murder in *Davison*, the court made it clear that the consideration of the same-act doctrine and the concern that the felony murder statute was being used as an end-run around the second degree murder statute are considerations separate and apart from the "independent felonious purpose" doctrine. See *Davison*, 236 Ill. 2d at 243-44 (rejecting State's request to limit analysis to "independent felonious purpose" question and continuing to adhere to consideration of these other questions as well). Thus, our holding above, that defendant's act of shooting at the van was inherent in the death of Darius Murphy, and that permitting a felony murder conviction in this case would permit the State to essentially nullify the second degree murder conviction, is sufficient on its own to reverse the felony murder conviction.

¶ 57    Regardless, we likewise agree with defendant that the State did not prove that defendant acted with a felonious purpose that was independent of the murder itself. For the reasons we have already given, we think this case is analogous to *Morgan*, 197 Ill. 2d at 447, 458, where the court held that the defendant's discharge of a firearm was not undertaken with a felonious purpose independent of the killing. See also *Pelt*, 207 Ill. 2d at 442 ("as in *Morgan*, it is difficult to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed the infant").

¶ 58    We appreciate that this case is different from *Morgan* in that here, defendant missed his intended target and killed an innocent bystander. But we do not see how the felonious purpose in shooting a bullet could somehow change based on where that bullet happened to land, regardless of whether it landed with the intended target or the unintended bystander. We certainly make no such distinction with other types of first degree murder.

¶ 59    Just the opposite. With other forms of first degree murder, in cases involving an unintended victim, the law treats the defendant's intent—his felonious purpose—in shooting the unintended victim as one and the same as his intent to kill the intended victim. If the defendant intended to kill an individual, he is deemed to have intended to kill the innocent bystander. See *People v. Thompson*, 313 Ill. App. 3d 510, 516 (2000) ("Under the doctrine of transferred intent, if a defendant shoots at one person, with the intent to kill, but kills an unintended victim, he may be convicted of the crime of murder for the death of the unintended victim."). If the defendant acted in self-defense in shooting at the intended target, he acted in self-defense in killing the innocent bystander. See *People v. Getter*, 2015 IL App (1st) 121307, ¶ 36 ("Under the doctrine of 'transferred intent,' the 'specific intent to kill one person in self-defense [may] be transferred to third parties ultimately affected by the acts of self-defense.' " (quoting *People v. Smith*, 94 Ill. App. 3d 969, 973 (1981)). If the defendant acted in provocation or unreasonable self-defense in shooting at the intended target, he acted the same way with

respect to the innocent bystander. *People v. Wetzel*, 308 Ill. App. 3d 886, 890, 894 (1999) (trial court should have instructed jury as to second degree murder where there was evidence that defendant fired at individuals in self-defense, but hit another person); *People v. Torres*, 269 Ill. App. 3d 339, 348 (1995) (affirming conviction for second degree murder that was based on transferred intent).

¶ 60    It would be incongruous to then assert, based on the same facts but now considering a charge of felony murder, that suddenly the defendant's felonious purpose in shooting the intended target is completely separate and utterly divorced from his felonious purpose in shooting the innocent bystander. The only thing that has changed is the type of first degree murder charged.

¶ 61    This returns us full circle to the concerns so appropriately and repeatedly expressed by the supreme court, that the State should not be permitted to nullify the second degree murder statute through the use of felony murder. If the State is correct in this case, it would have a license to avoid the second degree murder statute, and its burden of proving intent, in any transferred-intent case. The State could charge knowing, intentional, or strong-probability first degree murder and, for those counts, treat the defendant's intent in trying to kill one person as his intent to kill the unintended victim, as if they are one, indistinguishable felonious purpose. But the State could also charge felony murder and argue that, for the purposes of *that* first degree murder count, the felonious purpose in shooting at the intended target was altogether independent from the murder of the accidental victim. Thus, if the jury found that the defendant acted with a mitigated mental state of either provocation or unreasonable self-defense, the State could fall back on the felony murder charge to obtain a first degree murder conviction it could not otherwise obtain.

¶ 62    This is precisely the result our supreme court has rejected. It is also a result the General Assembly has rejected by excluding second degree murder as a predicate felony for felony murder. See 720 ILCS 5/9-1(a)(3) (West 2010) (defendant guilty of felony murder where death occurs while defendant "is attempting or committing a forcible felony *other than second degree murder*" (emphasis added)).

¶ 63    We hold that defendant did not act with a felonious purpose in shooting at the van that was independent of the act causing the death of Darius Murphy. For this reason, as well, defendant's felony murder conviction is reversed.

¶ 64                              3. Case Law Cited by the State

¶ 65    The State cites three cases interpreting *Morgan* and its progeny where an innocent bystander was killed and where the State charged aggravated discharge of a felony as the predicate felony for a felony murder. On their face, those cases would seem to be analogous, but upon examination each case is readily distinguishable.

¶ 66    The first case it cites is *Toney*, 337 Ill. App. 3d at 135, which as we previously discussed (*supra* ¶¶ 45-46), is plainly distinguishable from this case. In fact, *Toney* represents the more textbook example of a felony murder prosecution where the initial volley of gunfire—the predicate felony of aggravated discharge of a firearm—did not kill the innocent bystander, but instead set in motion a gunfight in which a bullet from someone else's gun killed the victim. In *Toney*, there could be no plausible argument that the codefendant's initial spray of gunfire was inherent in the death of the innocent bystander, considering that none of the codefendants' bullets killed the victim. *Toney*, 337 Ill. App 3d at 135. Nor could anyone deny that the

- 13 -

defendant's and his accomplices' felonious purpose in discharging the firearm was independent of the bystander's death, considering that their bullets did not kill the bystander and that his shooting took place several minutes after that initial spray of gunfire. *Id.* Finally, the court in *Toney* emphasized that the defendant and his codefendants "were not acting in self-defense," and unlike this case, there was no finding of imperfect self-defense that would trigger the supreme court's concern that the felony murder statute was used to subvert the second degree murder statute. *Id.*

¶ 67    The other cases the State cites are *People v. McGee*, 345 Ill. App. 3d 693 (2003), and *People v. Figueroa*, 381 Ill. App. 3d 828 (2008). Each of those cases is distinguishable, first and foremost, because they did not involve a jury finding of a mitigated mental-state or a verdict of second degree murder. Thus, the concerns expressed in *Morgan*, *Pelt*, *Davis*, and *Davison*—that the State not be permitted to avoid a second degree murder verdict through a felony murder charge—were not present in *McGee* or *Figueroa*. For that reason alone, we would reverse defendant's felony murder conviction notwithstanding *McGee* and *Figueroa*. But there are other reasons that we decline to rely on those two decisions.

¶ 68    In *McGee*, 345 Ill. App. 3d at 695, the defendant was driving when a rival gang member saw him and started shooting at his car. The defendant returned fire, striking an infant in the area. *Id.* at 695-96. The court found defendant guilty of felony murder predicated on aggravated discharge of a firearm. *Id.* at 696. This court affirmed, finding that the facts there were "almost identical" to those in *Toney* and holding that, "[f]or the same reasons the *Toney* court distinguished *Morgan*, we too can distinguish *Morgan* and *Pelt*." *Id.* at 698. But as we explained above, *Toney* was not a case where the defendant shot at one person and instead accidentally killed a bystander; *Toney* represented that more traditional example of felony murder where the predicate felony of aggravated discharge started a course of events during which someone other than the defendant or his accomplices shot the innocent bystander. *Toney*, 337 Ill. App. 3d at 135; *Dekens*, 182 Ill. 2d at 252. *Toney* may have been similar to *McGee* in that each case involved the death of an innocent bystander and the predicate felony was aggravated discharge, but in this most critical respect *Toney* was clearly distinguishable from *McGee*.

¶ 69    The court in *McGee* thus found that the discharge of the firearm at the rival gang member was not inherent in the murder because they were distinct acts: "[T]he defendant shooting at [the] rival gang member *** is the conduct which formed the basis of [the] defendant's aggravated discharge of a firearm conviction. The defendant shooting [the victim] is the conduct that formed the basis for murder." *McGee*, 345 Ill. App. 3d at 698. But the court did not explain how those acts were separate. To the contrary, it appears that the defendant's only act was shooting at the rival. That act *resulted* in the death of an unintended target, but the defendant's *conduct* was the same.

¶ 70    In *Figueroa*, the defendant and his fellow gang members were involved in a car chase with rival gang members. *Figueroa*, 381 Ill. App. 3d at 831. During the chase, the defendant stood up through the sunroof of the car and fired several shots at the rivals' car, one of which struck an innocent bystander. *Id.* at 830-31. This court affirmed a felony murder conviction based on the predicate felony of aggravated discharge. The court reasoned that, because "the facts here comprise a gang shooting" involving an innocent bystander, they mirror *McGee* and *Toney* (*id.* at 836), a proposition with which we disagree given what we have already said about *Toney*. The court distinguished *Morgan*, finding that "the aggravated discharge was not inherent in the

- 14 -

murder of [the victim] but, rather, involved conduct with a felonious purpose *other* than killing [the victim], namely, shooting at [the rival gang members], both of whom were nowhere near [the victim] at the time." (Emphasis in original.) *Id.*

¶ 71    It is not altogether clear whether there was one flurry of gunshots or more than one in *Figueroa*; the gang members were driving in cars, after all, so they could have covered a lot of ground in a short amount of time. The court's note that the gang members were "nowhere near" the victim when the defendant committed the predicate felony of aggravate discharge (*id.*) suggests that perhaps there was an initial volley of gunfire followed some time later, further down the road, by another series of gunshots closer to the victim. If so, the initial gunshots would not have resulted in the bystander's death, no one could plausibly claim that those shots were inherent in the bystander's murder, and *Figueroa* would be distinguishable from this case. If not, then we fail to see how the court could have reached the conclusion that the "shooting at [the rival gang members was] the conduct which formed the basis of the aggravated discharge of a firearm charge; his separate shooting (and hitting) of [the bystander] is the conduct which formed the basis of the murder." *Id.* It was all the same conduct—discharging a firearm in the direction of a rival gang member. The fact that all of the bullets missed the gang members, and one of them hit an innocent bystander, does not change the fact that the physical act was the same.

¶ 72    Because *Toney* is not remotely analogous, because neither *McGee* nor *Figueroa* implicated the concern that a felony murder charge could be used to undermine the second degree murder statute, and because of other concerns we have raised with those latter two cases, we reject the State's reliance on that case law in defense of its felony murder conviction.

¶ 73    For the reasons we have stated above, we reverse defendant's first degree felony murder conviction. In light of our disposition of this issue, most of defendant's remaining issues are rendered moot. We need not reach the alleged inconsistency of the felony murder and second degree murder verdicts, as we have reversed one of those allegedly inconsistent verdicts, leaving no possible inconsistency. Nor do we need to address the propriety of the trial court's denial of a second degree murder instruction with respect to the felony murder charge because that issue deals only with the felony murder conviction, which we have reversed. Nor do we need to address the denial of defendant's proposed instruction on the independent felonious purpose doctrine, since that instruction would only have affected the felony murder charge. Finally, defendant's arguments regarding his sentence are moot because our reversal of his first degree murder conviction requires him to be resentenced. The only remaining argument that we will address is the propriety of the State's instruction on aggravated discharge of a firearm.

¶ 74              B. Instruction on Justification and Aggravated Discharge of a Firearm

¶ 75    Defendant argues that the trial court erroneously instructed the jury that a defendant who commits aggravated discharge of a firearm is not justified in using force. The jury instruction with which defendant takes issue read, "A person is not justified in the use of force if he is committing aggravated discharge of a firearm." Defendant claims that this instruction improperly curtailed the jury's consideration of his self-defense claim.

¶ 76    The State claims that defendant forfeited this claim by failing to raise it at trial. Defendant argues that he did preserve this challenge, as his attorney objected to the delivery of the instruction. Defendant acknowledges that his attorney did not raise the issue in his posttrial

- 15 -

motion but contends that an exception to the posttrial-motion requirement applies. Specifically, defendant notes that "constitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture on direct appeal." (Emphasis in original.) *People v. Almond*, 2015 IL 113817, ¶ 54; see also *People v. Enoch*, 122 Ill. 2d 176, 190 (1988) ("[W]hen the defendant fails to comply with the statutory requirement to file a post-trial motion, our review will be limited to constitutional issues which have properly been raised at trial and which can be raised later in a post-conviction hearing petition [citation], sufficiency of the evidence, and plain error.").

¶ 77    While defendant's challenge to the justification instruction could be construed as a claim that his due process right to a fair trial was violated, and that the constitutional-issue exception to forfeiture should thus apply, our supreme court has stated, " 'Generally, a defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial *and* does not raise the instruction issue in a posttrial motion.' " (Emphasis added.) *People v. Mohr*, 228 Ill. 2d 53, 64-65 (2008) (quoting *People v. Herron*, 215 Ill. 2d 167, 175 (2005)). Because our supreme court has applied the posttrial-motion requirement to the very type of challenge defendant raises here—a jury instruction error—we must follow that rule. We find that defendant has forfeited this issue.

¶ 78    Defendant urges us to reach this issue despite his forfeiture pursuant to Illinois Supreme Court Rule 451(c) (eff. July 1, 2006), which provides that "substantial defects are not waived by failure to make timely objections [to jury instructions in criminal cases] if the interests of justice require." This rule "is coextensive with the plain-error clause of Supreme Court Rule 615(a)." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). Before determining whether the alleged error was a "substantial defect" or "plain error," we must first decide whether any error occurred at all. *Id.*

¶ 79    We apply a *de novo* standard of review to the question of whether the jury instructions accurately stated the applicable law. *People v. Parker*, 223 Ill. 2d 494, 501 (2006).

¶ 80    "[S]elf-defense is a proper affirmative defense to the crime of aggravated discharge of a firearm." *Getter*, 2015 IL App (1st) 121307, ¶ 36. If the jury had concluded that defendant fired on the van in self-defense, that defense would completely exonerate defendant of the offense of aggravated discharge of a firearm. See *People v. Eveans*, 277 Ill. App. 3d 36, 47 (1996) ("Self-defense is a justifying or exonerating circumstance."). Moreover, if established, defendant's self-defense would transfer to justify the shooting of Murphy. See *Getter*, 2015 IL App (1st) 121307, ¶ 36 ("Under the doctrine of 'transferred intent,' the 'specific intent to kill one person in self-defense [may] be transferred to third parties ultimately affected by the acts of self-defense.' " (quoting *Smith*, 94 Ill. App. 3d at 973)).

¶ 81    The jury instruction that defendant has challenged was based on Illinois Pattern Jury Instructions, Criminal, No. 24-25.10 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 24-25.10), which reads, "A person is not justified in the use of force if he is [(attempting to commit) (committing) (escaping after the commission of)] ___." The Committee Note to IPI Criminal 4th No. 24-25.10 indicates that the blank should be filled with "the forcible felony committed or attempted." IPI Criminal 4th No. 24-25.10, Committee Note.

¶ 82    IPI Criminal 4th No. 24-25.10 instructs the jury of the principle that self-defense is not available to a person who "[i]s attempting to commit, committing, or escaping after the commission of, a forcible felony." 720 ILCS 5/7-4(a) (West 2010). Aggravated discharge of a firearm is a forcible felony. *Figueroa*, 381 Ill. App. 3d at 835. Thus, on its face, the instruction

- 16 -

was an accurate one: it told the jury that, if defendant committed the forcible felony of aggravated discharge of a firearm, it could not conclude that he acted in self-defense.

¶ 83     But defendant contends that this instruction "effectively precluded the jury from even considering whether the shooting was justified" because it signaled to the jury that, because defendant shot at the van, he could never establish that his shooting was justified. In other words, defendant argues, the jury "was affirmatively told that a person cannot fire a gun at a van in self-defense."

¶ 84     We disagree. The jury was not told that, if defendant fired on the van, he could not utilize self-defense. Instead, it was told that, if defendant *committed the offense of aggravated discharge of a firearm*, he could not rely on self-defense. Critically, the jury also received an instruction stating that, in order to prove that defendant committed aggravated discharge of a firearm, the State had to prove three propositions:

> "First: That *** defendant knowingly discharged a firearm; and
>
> Second: That *** defendant discharged the firearm in the direction of a vehicle he knew to be occupied; and
>
> Third: That *** defendant *was not justified* in using the force which he used." (Emphasis added.)

Thus, the jury was correctly told that defendant only could commit aggravated discharge of a firearm if he was not justified in firing at the van, *i.e.*, if he was not acting in self-defense. Conversely, if the jury believed that he acted in self-defense, he could not be guilty of aggravated discharge of a firearm, and IPI Criminal 4th No. 24-25.10, as modified by the State, would not come into play.

¶ 85     We acknowledge that the jury was also given a definition of the offense of aggravated discharge of a firearm that did not specify that the offense is the *unjustified* firing of a gun at an occupied vehicle. Instead, it simply read, "A person commits the offense of aggravated discharge of a firearm when he knowingly discharges a firearm in the direction of a vehicle he knows to be occupied." But that does not change the fact that the jury was told that the State had to disprove justification in order to prove defendant guilty of aggravated discharge of a firearm. "We must presume, absent a showing to the contrary, that the jury followed the trial judge's instructions in reaching a verdict." *People v. Simms*, 143 Ill. 2d 154, 174 (1991). In this case, we must presume that the jurors read both the definitional and issues instructions for aggravated discharge of a firearm. And when they did so, they would understand that the State could not prove that defendant committed the forcible felony of aggravated discharge of a firearm unless they also concluded that defendant did not act in self-defense.

¶ 86     Moreover, this court has held that the omission of the justification language from a definitional instruction is not plain error so long as it is included in the issues instruction, as it was in this case. See, *e.g.*, *People v. Rios*, 318 Ill. App. 3d 354, 362-64 (2000). In light of the inclusion of the justification language in the issues instruction for aggravated discharge of a firearm, defendant has not shown that the use of IPI Criminal 4th No. 24-25.10 in this case was a substantial defect in the jury instructions.

¶ 87     Defendant cites *Getter*, 2015 IL App (1st) 121307, ¶¶ 41, 64, where we held that the exclusion of self-defense language in the issues instruction for aggravated discharge of a firearm was plain error. In *Getter*, the court had included the self-defense language in the issues instructions for the other offenses defendant had been charged with, and of which

- 17 -

defendant was acquitted, but neglected to include it in the issues instruction for aggravated discharge of a firearm, the only offense of which defendant was found guilty. *Id.* ¶¶ 41, 67. This case is not similar to *Getter*. Here, the court told the jury that defendant could not be justified in the use of force if he committed aggravated discharge of a firearm and that the State could not prove that defendant committed aggravated discharge of a firearm unless it proved that defendant was not justified in using force. Thus, the jury was properly instructed regarding self-defense.

¶ 88 Defendant also argues that the jury's note, requesting a definition of justification, showed that the jury was confused by the modified version of IPI Criminal 4th No. 24-25.10. But the jury had already received an instruction explaining when a defendant's use of force is justified. In response to the jury's note, the trial court told the jury it had already received the definition of a justified use of force. Defendant perfunctorily claims that this response was improper, but even if this one-sentence argument was not forfeited (see *People v. Lacy*, 407 Ill. App. 3d 442, 459 (2011) (defendant forfeited argument on appeal where he did not develop it further "than a one-sentence statement that trial counsel was ineffective")), we would disagree with his argument because the instructions already accurately defined justification, making further clarification unnecessary. See *People v. Reid*, 136 Ill. 2d 27, 39 (1990) (trial court has no duty to answer jury question where instructions are readily understandable and sufficient to explain law). After receiving this response from the trial court, the jury expressed no further confusion regarding justification. It is entirely possible that, in directing the jury back to its instructions, the jury resolved its confusion and properly applied the correct definition of justification. The jury note offers defendant no support for his claim that the modified IPI Criminal 4th No. 24-25.10 actually confused the jury.

¶ 89 Defendant also argues that his attorney was ineffective for failing to object to the modified IPI Criminal 4th No. 24-25.10. But as we have concluded that the instruction was legally correct, counsel cannot be considered ineffective for failing to challenge it. See, *e.g.*, *People v. Simms*, 192 Ill. 2d 348, 377-78 (2000) (counsel not ineffective for failing to object to appropriate instructions). Defendant is not entitled to a new trial based on the delivery of this instruction.

¶ 90                                              III. CONCLUSION

¶ 91 For the reasons stated, we reverse defendant's first degree murder conviction, affirm defendant's remaining convictions, and remand for resentencing.

¶ 92 Reversed in part, affirmed in part, and remanded.

¶ 93 JUSTICE McBRIDE, specially concurring.

¶ 94 I concur in the majority's decision to vacate the verdict of felony murder and remand for resentencing on the second degree murder conviction. I write separately to express my disagreement regarding portions of the majority's analysis and to address some troubling aspects of this case.

¶ 95 As Justice Garman has pointed out in her special concurrences in *People v. Davis*, 213 Ill. 2d 459, 480-98 (2004) (Garman, J., specially concurring), and *People v. Davison*, 236 Ill. 2d 232, 245-49 (2010) (Garman, J., specially concurring, joined by Burke, J.), the test for when a

- 18 -

particular felony can be a proper basis for a conviction of felony murder lacks clarity and has become confusing for courts and practitioners. See *Davis*, 213 Ill. 2d at 497 (Garman, J., specially concurring).

¶ 96     The supreme court has declined to either expressly adopt or reject the "same-act doctrine," used in a number of other jurisdictions, which precludes a felony murder conviction "whenever the act that constitutes the predicate felony is the same act that results in the death of the victim." *Davison*, 236 Ill. 2d at 245 (Garman, J., specially concurring, joined by Burke, J.). The supreme court, however, has suggested its use of this doctrine in a number of cases including *Morgan*, *Pelt*, *Davis*, and *Davison* when it has stated that when felony acts "arise from and are inherent in the act of murder itself," they cannot serve as predicate felonies for a charge of felony murder. At the same time, however, the supreme court has expressly reaffirmed its decision in *People v. Viser*, 62 Ill. 2d 568 (1975), in which it previously rejected the same-act doctrine. See *Davison*, 236 Ill. 2d at 245 (Garman, J., specially concurring, joined by Burke, J.).

¶ 97     Since the supreme court's latest pronouncement on this issue, there appears to be continued confusion as to whether the supreme court's requirements that the defendant acted with an independent felonious purpose, and that the predicate felony not be inherent in the murder itself, are two separate elements or whether they are part and parcel of the same inquiry. After its thorough review of the precedent on this issue, I agree with the majority that the test requires two separate findings. Although I disagree with the majority's conclusion that there was no independent felonious purpose here, I ultimately agree that defendant's aggravated discharge of a firearm arose from and was inherent in the killing of the victim, and thus, his felony murder conviction cannot stand.

¶ 98     Since the supreme court's decisions in *Morgan* and *Pelt*, there have been numerous decisions which have found the independent felonious purpose necessary to support a finding of felony murder in cases like this one, involving the killing of innocent bystanders. See, *e.g.*, *People v. Figueroa*, 381 Ill. App. 3d 828, 837 (2008) (where the defendant's shooting at a rival gang member formed the basis of the underlying offense of aggravated discharge of firearm, the defendant's act in shooting at the rival gang member was not an act that was inherent in and that arose out of the killing of the innocent bystander victim, and, thus, aggravated discharge of a firearm could properly serve as the underlying felony for felony murder); *People v. McGee*, 345 Ill. App. 3d 693, 698-99 (2003) (where the defendant's conduct of shooting at a rival gang member formed the basis of underlying offense of aggravated discharge of a firearm, the predicate offense underlying the felony murder charge involved conduct with a felonious purpose other than the conduct which killed the victim, a baby in a stroller nearby); *People v. Toney*, 337 Ill. App. 3d 122, 135 (2003) (where the defendant was involved in an altercation with members of a rival gang and return shots were fired killing a bystander, *Morgan* did not preclude the finding of a felonious purpose other than killing the bystander); *People v. Colbert*, 2013 IL App (1st) 112935, ¶ 16 (the mob action of beating the victim to death, properly served as the predicate felony for felony murder where the action had an independent felonious purpose other than the murder itself); *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 734 (2009) (the defendant's act of shooting at the pregnant victim was conduct which demonstrated a felonious purpose other than the death of the in utero child who died three months after delivery). Unlike *Morgan* and *Pelt* where the defendants' acts were directed at the victim who

actually died, the defendants' acts in these cases were directed at someone else, in many cases a rival gang member.

¶ 99    Like in *McGee*, *Toney*, *Figueroa*, *Colbert*, and *Alvarez-Garcia*, I believe that defendant's act of shooting at what he thought was a rival gang member's van demonstrated an independent felonious purpose apart from the murder of the victim. In this case, defendant's acts were directed at the individual or individuals in the rival gang's van and not at the bystander victim who was sitting in a vehicle across the street. As the supreme court observed in *Davis*, 213 Ill. 2d at 474, in order to convict defendant of the predicate felony of mob action "it was not necessary to prove that defendant struck [the victim], much less performed the act that caused the killing." Thus, the supreme court concluded that the predicate felony "involved conduct with a felonious purpose other than the conduct which killed [the victim]." *Id*. Similarly here, the State was not required to prove anything with regard to the victim in order to prove defendant committed aggravated discharge of a firearm. All that was required was that it show that defendant knowingly discharged a firearm in the direction of the rival gang's van, which he knew to be occupied. That crime was completed without any felonious purpose as to the victim who was sitting across the street. Therefore, I would conclude that defendant's act underlying the predicate offense demonstrated an independent felonious purpose apart from the victim's murder.

¶ 100   The majority attempts to distinguish the First District cases cited above by relating specific aspects of their individual fact patterns. It posits that *Toney* is distinguishable because the defendant engaged in two separate bouts of shooting, whereas here defendant fired one "cluster of shots" at the van. The majority further states that, unlike in *Figueroa* where the aggravated discharge occurred during a prolonged car chase and fired at rivals "nowhere near" the victim, defendant's shots here occurred in a short amount of time within a limited area. I do not agree with the majority's attempts to factually distinguish the above First District cases. The decisions in these cases were based not on the minor distinctions cited by the majority but on the court's determination that the defendant's shooting at an individual other than the bystander victim, oftentimes a rival gang member, demonstrated an independent felonious purpose to support a felony murder charge.

¶ 101   I also disagree with the majority's characterization of the evidence in this trial in its attempt to factually distinguish this case from the other First District cases. The majority contends that there is nothing in the record here to show that defendant's acts "set in motion a course of events that later led to the victim's death." *Supra* ¶ 43. "There was no return gunfire, nothing in the record to indicate that defendant's shots were preceded, or followed, by any felonious act whatsoever." *Supra* ¶ 45. However, the accounts provided by the trial witnesses who attended the gathering that night varied widely and could have been consistent with a number of different factual scenarios. Some witnesses testified that they observed only one man in the van, while others observed three people. Some witnesses were not sure if anyone in the van was armed, while others saw what looked like a gun, saw a "flash," or heard gunfire coming from the van. At least one of the witnesses previously gave a statement in which she indicated that a passenger in the van pointed a gun at defendant and fired at him. Some witnesses testified that they heard 4 or 5 shots, while others heard 6, 7, or 10 gunshots. One witness said the shots were not in succession. Although five cartridge cases were recovered from the scene and were identified as having been fired from the same 9-millimeter handgun, the bullet core that was recovered from the victim's head was not able to be connected to that same weapon.

Given this testimony presented at trial, it is not clear how many shots were fired or whether some of those shots were return gunfire.

¶ 102    However, I do believe that this case can be distinguished from the other First District innocent bystander cases based on the verdicts returned by the jury. The significant difference in this case, compared to all of the First District decisions cited above, is that the jury here accepted defendant's imperfect self-defense and returned a verdict of second degree murder in addition to felony murder.

¶ 103    I agree with the majority that under the circumstances presented here, defendant's act constituting the underlying felony of aggravated discharge of a firearm arises out of and is inherent in the murder itself. The act which supported defendant's aggravated discharge of a firearm conviction, namely shooting at the rival gang's van, is the same act that resulted in the death of the victim. Under the circumstances of this case, in which the victim was struck and killed by a single bullet, I believe that defendant's act of discharging a firearm was inherent in and arose out of the murder itself. See *Davison*, 236 Ill. 2d at 248 (Garman, J., specially concurring, joined by Burke, J.) (observing that where the defendant "committed several acts [of mob action], including throwing the bat and stabbing the victim, the majority's additional standard can also be met"). However, had the defendant "struck only one blow as his friends restrained the victim, and that blow resulted in his death," a felony murder conviction could not stand. *Id.* "Although defendant would have been acting with an independent felonious purpose, the act proving the felony would have 'arisen out of' and been 'inherent in' the act of murder itself." *Id.*

¶ 104    I also disagree with the majority's contention that this case is "unlike a more traditional case of felony murder." *Supra* ¶ 43. In my opinion, the felony murder statute was designed particularly for the type of situation here, and its purpose seems to be served in a case like this one, in which an innocent bystander was killed. See *People v. Belk*, 203 Ill. 2d 187, 192 (2003) (observing that the purpose behind the felony murder doctrine is to limit the violence that accompanies the commission of forcible felonies, so that anyone who commits such a violent felony will be automatically subject to a murder charge if someone is killed during the commission of that felony). As Justice Garman stated in her concurrence in *Davison*, our "legislature has clearly expressed the intent that when a defendant intends to commit a forcible felony, his committing that felony is a sufficient basis to impose liability for murder if the victim dies as a result. There is nothing in the statute that would impose felony-murder liability on the defendant who strikes the victim multiple times, but not impose liability on the defendant who strikes the victim only once." *Davison*, 236 Ill. 2d at 248-49 (Garman, J., specially concurring, joined by Burke, J.).

¶ 105    At the same time, however, when a defendant exercises his right to self-defense, and accidentally kills an innocent bystander, he cannot be convicted of murder. *People v. Hill*, 315 Ill. App. 3d 1005, 1012 (2000); 720 ILCS 5/7-1 (West 2010). Likewise, when a defendant kills an individual while acting under the unreasonable belief that he was acting in self-defense, his crime is mitigated, his acts amount to second degree murder, and he should not be punished as a first degree murderer. See *Davis*, 213 Ill. 2d at 474 (It is "improper to find the defendant to be a first degree murderer when the predicate felony was inherent in the killing and when the State had failed to prove another form of first degree murder to the jury." (citing *Pelt*, 207 Ill. 2d at 442)); 720 ILCS 5/9-2 (West 2010). This recognizes defendant's right to present a defense, which is paramount to the State's ability to charge and seek a conviction. An accused has the

" 'right to present a defense, the right to present the defendant's version of events as well as the prosecution's to the jury so it may decide where the truth lies.' " *People v. Manion*, 67 Ill. 2d 564, 576 (1977) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)); see also *Davis*, 213 Ill. 2d at 492 (Garman, J., specially concurring) ("The *Morgan* 'type of case' is one where the defendant admits intent to kill, but argues that his crime is second degree murder rather than first degree murder. Having admitted the intent to kill, he must be given the opportunity to present his case for provocation or imperfect self-defense to the fact finder."). In this case, the defendant did so. He presented a defense of imperfect self-defense, and the jury agreed, finding that his involvement in the murder of the victim was mitigated. In these circumstances, defendant's felony murder conviction cannot stand.

¶ 106    This case is significant because the factual scenario heard by this jury is likely to recur. Gang shootings have become an all-too-common problem, leaving innocent bystanders hurt or killed. See J.J. Gallagher, *Bloody Weekend as Chicago Sees 4 Killed, Dozens Wounded in Shootings*, ABC News (Aug. 22, 2016), http://abcnews.go.com/US/bloody-weekend-chicago-sees-killed-dozens-wounded-shootings/story?id=41565833 (reporting that 27 children younger than 13 years old had been shot in Chicago from January 1, to August 22, 2016). Many of these situations, in which there is an exchange of gunfire or other violent force, may create situations leading to a felony murder charge, while at the same time, the defendant may have a claim of perfect or imperfect self-defense. Although our supreme court has reviewed the issue of proper predicate felonies for felony murder on a number of occasions, none of those cases have involved the deaths of innocent bystanders.

¶ 107    Another district of this court has recently addressed a similar situation in *People v. Lefler*, 2016 IL App (3d) 140293, ¶ 12, in which the jury returned verdicts for second degree murder—crediting the defendant's imperfect self-defense or serious provocation defenses—and felony murder based on an attempted burglary. Although that case is distinguishable from the case at bar because the defendant in *Lefler* did not, and perhaps could not, raise a challenge based on *Morgan*, the Third District Appellate Court concluded that the trial court was correct in sentencing defendant on the more serious offense of felony murder. *Id.* ¶ 25. The differing results in these two cases, and the fact that this scenario can and has recurred, illustrates that the current jury instructions are not adequately describing the law and there is a lack of clarity in the test's requirements.

¶ 108    If this situation arises again, and it will, given the frequent nature of similar gang shootings, trial courts should be knowledgeable of how to address this issue with appropriate instructions and what course to take when the jury returns verdicts like the ones rendered in this case.