2021 IL App (2d) 191098-U
No. 2-19-1098
Order filed September 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-2486 |
| DAVID M. BROCKSOM, | ) ) ) | Honorable George D. Strickland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The defendant's conviction of first-degree murder was affirmed where (1) home invasion was a proper predicate offense for the State's felony-murder theory and (2) there was no speedy-trial violation.

¶ 2    Following a jury trial in the circuit court of Lake County, defendant, David M. Brocksom, was convicted of first-degree murder (720 ILCS 5/9-1(a)(3) (West 2014)) and home invasion (720 ILCS 5/19-6(a)(2) (West 2014)). The victim was defendant's ex-wife, Beata Brocksom. The court determined that the counts merged and then sentenced defendant to 90 years' imprisonment for first-degree murder. Defendant appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant raises narrow legal challenges to the judgment that do not require a lengthy recitation of the evidence. We will recount only the facts that are necessary to resolve this appeal.

¶ 5      Defendant has remained in continuous custody since his arrest on September 27, 2015. On September 28, 2015, defendant was charged by complaint with first-degree murder (720 ILCS 5/9-1(a)(1) (West 2014)). The complaint alleged that, on September 27, 2015, defendant shot Beata with a handgun without lawful justification and with the intent to kill her.

¶ 6      On October 28, 2015, defendant was charged by indictment with three counts of first-degree murder. Each count alleged that, on or about September 27, 2015, defendant, without lawful justification, shot Beata in the body with a firearm. Count I alleged that defendant acted with the intent to kill or to do great bodily harm to Beata (720 ILCS 5/9-1(a)(1) (West 2014)). Count II alleged that defendant knew that his acts would cause Beata's death (720 ILCS 5/9-1(a)(1) (West 2014)). Count III alleged that defendant knew that his acts created a strong probability of death or great bodily harm to Beata (720 ILCS 5/9-1(a)(2) (West 2014)).

¶ 7      On November 4, 2015, defendant moved for a substitution of judge. The court denied that motion on November 13, 2015. Immediately after the court ruled on that motion, defense counsel requested a trial date. The court asked defense counsel whether defendant was "demanding trial." Defense counsel responded: "No, Judge. We are going to suggest at this point the [February 8, 2016] trial call, and I am not at this point committing that is a realistic trial date, but I think that should be the initial one." The court said that it would "work" with the parties, as the court knew that the case involved "a lot of discovery." The prosecutor informed the court of the discovery that was outstanding. Defense counsel again proposed February 8, 2016, as a trial date, reiterating that he was "not necessarily saying that is a realistic trial date at this point." With the agreement of the

parties, the court set the matter for a case management conference on December 9, 2015, and for trial on February 8, 2016.

¶ 8     On November 18, 2015, a grand jury indicted defendant on eight additional counts. This included one count of robbery (720 ILCS 5/18-1(a) (West 2014) (count VIII)), three counts of home invasion (720 ILCS 5/19-6(a)(2), (a)(3), (a)(4) (West 2014) (counts IX through XI)), and four counts of first-degree murder (720 ILCS 5/9-1(a)(3) (West 2014) (counts IV through VII)) based on felony-murder theories. The robbery and home invasion counts served as the predicate offenses for the felony murder counts. Each of the eight additional counts pertained to conduct that occurred on or about September 27, 2015, and Beata was the victim in each count.

¶ 9     On November 23, 2015, the court arraigned defendant on the eight additional counts. By agreement, the court continued the case to the previously scheduled case management conference on December 9, 2015.

¶ 10     On December 9, 2015, defense counsel informed the court that the February 2016 trial date was "not a realistic one." On defendant's motion, the court rescheduled the matter for trial on March 14, 2016.

¶ 11     Over the next several years, the parties engaged in extensive motion practice and an ongoing exchange of discovery, which ultimately delayed the trial until November 2018. During this time, the defense never demanded a speedy trial or objected to any continuance. Nevertheless, in October 2018—after the final trial date had been set—defendant filed a *pro se* motion seeking to dismiss counts IV through XI of the indictment on speedy-trial grounds. Defense counsel declined to adopt that *pro se* motion, and the court refused defendant's request to present the motion.

¶ 12     The evidence at trial showed that, in 2015, defendant and Beata were embroiled in

contentious litigation regarding the custody of their two minor children. During the last weekend of September 2015, defendant took the children on a trip to the Wisconsin Dells. In the early morning hours of September 27, 2015, while the children were sleeping, defendant drove from the Wisconsin Dells to Beata's home in Gurnee. Defendant and Beata got into a physical struggle inside the house, and Beata ended up dying from a gunshot wound to her neck. The medical examiner who performed the autopsy noted that Beata had numerous abrasions, including on her "lower face and undersurface of the chin." Defendant left the scene but turned himself in later that day.

¶ 13    The State's theory at trial was that defendant planned an elaborate murder scheme. He would enter Beata's house using a key that he had previously taken from his son and had copied. Once inside, defendant would shoot Beata, stage the scene to make it look like a suicide, and then return to the Wisconsin Dells before anybody knew he was gone. According to the State, that plan went awry when Beata woke up and put up more of a fight than defendant anticipated. The gun ended up discharging twice, first into Beata's mattress and then into her neck. Despite being shot, Beata was able to crawl through her window and cry out for help before dying on the lawn. The State theorized that, because defendant's plan of staging a suicide fell apart, he spontaneously switched to a backup plan: bloodying himself up and concocting a story that Beata attacked him with a gun.

¶ 14    The defense's theory was as follows. Defendant made a spontaneous visit to Beata's house at 4 a.m. to confront her about allegations that one of their children mentioned to him the previous evening. Defendant was unarmed. Beata allowed him into her home but then attacked him by using a gun as a bludgeon. Defendant "fought for his life," and Beata was shot during the struggle.

¶ 15    At trial, the State initially proceeded on all eleven counts of the indictment. Once the State

completed its case-in-chief, however, it *nolle prossed* counts I-IV and VIII (intentional/knowing first-degree murder, robbery, and felony murder predicated on robbery). Ultimately, the State requested jury instructions only regarding felony murder and the State's "intentional injury" theory of home invasion. Thus, effectively, only counts V and IX went to the jury. Specifically, in count V, the State alleged that defendant committed first-degree murder in that, on or about September 27, 2015, without lawful justification and while committing the offense of home invasion as set forth in count IX, he shot a firearm into the body of Beata, thereby causing her death. In turn, count IX alleged that, on or about September 27, 2015, "defendant, who was not a peace officer acting in the line of duty, knowingly, and without authority, entered the dwelling place of Beata Brocksom, *** having reason to know that one or more persons was present within that dwelling place and, intentionally[,] caused an injury to Beata Brocksom, a person within the dwelling."

¶ 16     The jury found defendant guilty of both first-degree murder and home invasion. The jury also found that "defendant personally discharged a firearm that caused death to another person at the time of the offense." For purposes of a sentencing enhancement, the jury further found that "the murder was committed in a cold, calculated, and premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life by unlawful means, and the conduct of the defendant created a reasonable expectation that the death of a human being would result therefrom." See 720 ILCS 5/9-1(b)(11) (West 2014); 730 ILCS 5/5-8-1(a)(1)(b) (West 2014).

¶ 17     The court denied defendant's posttrial motion and sentenced him to 90 years' imprisonment for first-degree murder. Defendant timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant argues that he was improperly convicted under a felony-murder theory, as his only purpose in committing home invasion was to facilitate the intentional murder of Beata. Defendant also alleges a speedy-trial violation.

¶ 20                    A. Propriety of the First-Degree Murder Conviction

¶ 21    Defendant maintains that, because he had no purpose for committing the home invasion apart from killing Beata, home invasion was not a proper predicate offense for the State's felony-murder theory. The State responds that home invasion was a proper predicate offense, as such offense "was not inherent in, and did not arise from, the act of murder itself." Whether an offense serves as a proper predicate for felony murder is a question of law that we review *de novo*. *People v. Davison*, 236 Ill. 2d 232, 239 (2010).

¶ 22    The felony-murder doctrine allows for a conviction of first-degree murder even where the State does not prove that the defendant either intended to kill the victim or knew that death would result. *Davison*, 236 Ill. 2d at 239-40. Of course, "many murders are accompanied by certain predicate felonies." *Davison*, 236 Ill. 2d at 240. For example, "every shooting necessarily encompasses conduct constituting aggravated battery, *i.e.*, great bodily harm, as well as conduct constituting aggravated discharge of a firearm, *i.e.*, discharging a firearm in the direction of another." *People v. Morgan*, 197 Ill. 2d 404, 447 (2001). Therefore, in any shooting case, the State potentially could charge "felony murder based upon aggravated battery and/or aggravated discharge of a firearm." *Morgan*, 197 Ill. 2d at 447.  Doing so, however, would improperly allow the State to use felony murder both to "eliminate the offense of second degree murder and avoid the burden of proving an intentional or knowing first degree murder." *Davison*, 236 Ill. 2d at 240.

¶ 23     To address this potential misuse of the felony-murder statute, our supreme court has held that, "where the acts constituting forcible felonies arise from and are inherent in the act of murder

itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Morgan*, 197 Ill. 2d at 447. To that end, the predicate offense "must have an independent felonious purpose." *Morgan*, 197 Ill. 2d at 458.

¶ 24  The trial court rejected defendant's contention in his posttrial motion that home invasion was not a proper predicate offense for felony murder. The court reasoned as follows. Defendant "clearly was planning for some period of time" to murder Beata, and murdering her was his "overriding intention." Nevertheless, to commit the murder while making it look like a suicide, defendant needed to gain unauthorized access to Beata's house and surprise her. Obtaining keys to Beata's house and then entering that house without authority were separate acts from firing a gunshot. Defendant successfully entered Beata's home and surprised her. However, defendant then got into a struggle with Beata, and "the first gunshot missed." Before shooting Beata, defendant grabbed her and "inflict[ed] harm on her jaw area," completing the offense of home invasion as it was charged in the indictment. Once she was shot, Beata was able to exit the house and call out for help, so defendant's "suicide scenario was out and he had to segue over to a self-defense type of scenario." Accordingly, there was a separate felonious purpose between the home invasion and the acts that caused Beata's death. Likewise, there was not a "complete identity" between the acts that formed the basis for the home invasion charge and the murder charge.

¶ 25  The trial court also believed that it would create an absurd result to rule otherwise. The court envisioned the following scenario:

"In other words, two people intend—two people are going to commit a home invasion. One person has no intention of killing anybody inside the house, but the other person does and went there to kill somebody. So the person who goes inside where somebody ends up dead, not intending to kill anybody, can be charged with felony murder. Yet the person with the

more egregious mental state, under Illinois law, can't be charged with felony murder. That is an absurd result."

¶ 26    Putting aside that defendant's argument contradicts his theory at trial that he did *not* intend to commit murder, we hold that home invasion was a proper predicate offense for felony murder under the facts of this case. Although the evidence overwhelmingly showed that defendant intended to kill Beata, he also intended to enter her home surreptitiously to do so. Thus, defendant contemplated committing multiple distinct criminal acts to accomplish his objective.

¶ 27    Moreover, an offense may be deemed a proper predicate for felony murder when the State proves such offense with "evidence apart from the actual murder." *Davison*, 236 Ill. 2d at 242. Here, the home invasion involved separate acts from the actual murder, so the home invasion and murder were not premised on identical evidence. The home invasion count serving as the predicate offense for defendant's felony-murder conviction included an allegation that defendant "intentionally caused an injury" to Beata. However, in his closing argument, the prosecutor did not rely exclusively on the fatal gunshot as being the source of this injury ("And for purposes of home invasion, Ladies and Gentlemen, it could be any injury. Any injury. Pulling her hair, abrasions to chin. Obviously, a gunshot.").

¶ 28    We may also consider whether the home invasion was completed "before the end of the aggression that eventually resulted in the victim's death." *Davison*, 236 Ill. 2d at 242. In his closing argument, the prosecutor theorized that defendant injured Beata's chin before he fired the fatal shot ("He's got his left hand on her chin, squeezing her chin hard enough to leave that abrasion, squeezing her chin, pushing her head back, because he's lining up that shot."). We also note that the jury was given a very broad definition of "injury": "The term 'injury' in the definition of home invasion may include physical injury. It also includes psychological or emotional trauma if that

trauma was a result of some physical contact." The evidence supported an inference that defendant and Beata got into a physical struggle before defendant fired the fatal shot. Accordingly, the offense of home invasion was completed before the end of the aggression that eventually resulted in Beata's death.

¶ 29    Another relevant consideration is whether the conduct constituting home invasion was inherent in, or arose from, the murder itself. *Davison*, 236 Ill. 2d at 243. It would be impossible, for example, to commit a murder by shooting without also committing the offenses of aggravated battery and aggravated discharge of a firearm. By contrast, it is possible to commit murder without also committing home invasion. Thus, home invasion is not the type of offense that is inherent in or always arises out of murder. Additionally, as explained above, defendant's conduct giving rise to the home invasion count involved acts other than the ones that caused Beata's death.

¶ 30    The parties cite three cases in which courts determined that an offense could not serve as a predicate for felony murder pursuant to the "independent felonious purpose" rule: *Morgan*, *People v. Pelt*, 207 Ill. 2d 434 (2003), and *People v. Shafer*, 2020 IL App (4th) 180343. In *Morgan*, a boy shot and killed his grandparents, and the State attempted to use aggravated battery and aggravated discharge of a firearm as the predicate offenses for felony murder. *Morgan*, 197 Ill. 2d at 447. Our supreme court held that this was an improper use of the felony-murder statute, as aggravated battery and aggravated discharge of a firearm are offenses that are inherent in every fatal shooting. *Morgan*, 197 Ill. 2d at 447. Like *Morgan*, in *Pelt*, the defendant committed one physical criminal act that killed the victim (throwing an infant against a dresser), and the State improperly attempted to use an offense that was inherent in that act (aggravated battery) as the predicate offense for felony murder. *Pelt*, 207 Ill. 2d at 442. In *Shafer*, the defendant fired a gun at a person whom he believed was going to harm him, but he ended up killing his girlfriend. *Shafer*, 2020 IL App (4th)

180343, ¶ 9. After analyzing the issue through the lens of "transferred intent," the appellate court determined that aggravated discharge of a firearm was an improper predicate offense for felony murder. *Shafer*, 2020 IL App (4th) 180343, ¶ 52. These cases are distinguishable, because defendant here intended to commit, and did commit, multiple distinct criminal acts in furtherance of his overall plan to kill Beata. And unlike *Shafer*, this is not a "bad-aim case" implicating principles of transferred intent.

¶ 31    Defendant cites *People v. Melecio*, 2017 IL App (1st) 141434, in his reply brief, and he relied on the case again at oral argument. *Melecio* does not support reversing defendant's conviction of first-degree murder. For one thing, the specific language that defendant cites does not apply here, as the court was addressing a one act, one crime claim. *Melecio* is further distinguishable because the indictment in that case alleged that the defendant committed vehicular invasion " 'with the intent to commit *** first degree murder.' " *Melecio*, 2017 IL App (1st) 141434, ¶ 69. Here, by contrast, the home invasion count that served as the predicate offense for defendant's murder conviction did not allege that defendant committed home invasion with the intent to commit murder.

¶ 32    For these reasons, we hold that home invasion was a proper predicate offense for felony murder under the facts of this case.

¶ 33                    B. Alleged Speedy-Trial Violation

¶ 34    Defendant also argues that the State violated his statutory right to a speedy trial by failing to bring him to trial on the felony murder and home invasion counts within 120 days of his arrest.

¶ 35    Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2018)) provides, in relevant portion, as follows:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."

"The 120-day speedy-trial period begins to run automatically if a defendant remains in custody pending trial." *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). Nevertheless, "[d]elay occasioned by the defendant shall temporarily suspend the time of the delay the period within which a person shall be tried *** and on the day of expiration of the delay the said period shall continue at the point at which it was suspended." 725 ILCS 5/103-5(f) (West 2018). If a defendant is not tried within the requisite period, such defendant "shall be discharged from custody or released from the obligations of his bail or recognizance." 725 ILCS 5/103-5(d) (West 2018).

¶ 36    "Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense." *People v. Williams*, 204 Ill. 2d 191, 198 (2003). "Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times." *Williams*, 204 Ill. 2d at 198. In that situation, principles of compulsory joinder enter the equation. *Williams*, 204 Ill. 2d at 198. Specifically:

" 'Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional

charges were not before the court when those continuances were obtained.' " (Emphasis removed.) *Williams*, 204 Ill. 2d at 201 (quoting *People v Williams*, 94 Ill. App. 3d 241, 248-49 (1981)).

In other words, delays that are attributable to the defense on the original charges may or may not be attributable to the defense on later-filed charges. Thus, it is possible that a trial involving multiple charges can be timely as to certain counts and untimely as to others. This premise has come to be known as the "*Williams* rule." See *People v. Dryer*, 2021 IL App (2d) 190187, ¶ 18.

¶ 37    The rationale for the rule is as follows:

"If the initial and subsequent charges filed against the defendant are subject to compulsory joinder, delays attributable to the defendant on the initial charges are not attributable to the defendant on the subsequent charges.

    The harm in a contrary result is obvious: a trial by ambush. The State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges. *** All choices about requests that would delay proceedings would be made under a false understanding as a result of this deception. When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial. Today, we do not create a loophole for criminal defendants. Instead, we close a loophole which would allow the State to circumvent a statutorily implemented constitutional right." (Internal quotation marks removed.) *Williams*, 204 Ill. 2d at 207.

Our supreme court has subsequently clarified that charges are not "new and additional" for purposes of the *Williams* rule if the original charging instrument provided the defendant with

"adequate notice of the subsequent charges to allow preparation of a defense." *Phipps*, 238 Ill. 2d at 67. Therefore, "compulsory joinder is a necessary, but not sufficient, condition for the application of the *Williams* rule." *People v. Isbell*, 2020 IL App (3d) 180279, ¶ 16.

¶ 38    Defendant does not dispute that, due to his various requests for continuances and his acquiescence to continuances requested by the State, the matter proceeded to a timely trial in November 2018 on counts I through III. Those counts were contained in the original indictment dated October 28, 2015, and they were among the charges that the State *nolle prossed* during trial. Nevertheless, defendant invokes the *Williams* rule in support of his argument that the trial was untimely as to the first-degree murder and home invasion charges that the State added on November 18, 2015. As to those charges, defendant maintains that the speedy-trial period expired on January 25, 2016, 120 days after his arrest.

¶ 39    In response, the State argues that defendant was timely tried because the defense occasioned the delays in this case. The State further maintains that the first-degree murder and home invasion charges filed on November 18, 2015, were not "new and additional."

¶ 40    When denying defendant's posttrial motion, the trial court reasoned that defendant acquiesced in the delays and failed to make a speedy-trial demand. Thus, the court determined, "defendant waived the speedy trial issue." The court also believed that defendant was improperly attempting to use speedy-trial principles as a sword rather than a shield. See *Dryer*, 2021 IL App (2d) 190187, ¶ 34 (it is improper for a defendant to seek to "use the speedy trial statute as a sword to dismiss the serious charges leveled against him rather than as a shield to prevent trial by ambush.").

¶ 41    We agree with the trial court's assessment. Defendant never demanded a speedy trial. To the contrary, his counsel informed the court very early in the case, on November 13, 2015, that

defendant was not demanding a speedy trial. That same day, defense counsel requested a tentative trial date of February 8, 2016—a date that would have been more than 120 days after defendant was taken into custody—while acknowledging that such date may not be "realistic." On November 18, 2015, the State added counts IV-XI against defendant. This was only three weeks after the original indictment and only 52 days after defendant was taken into custody. Thereafter, defendant either requested or acquiesced to all continuances for almost three years until the trial began. It was not until October 2018, one month before trial, that defendant filed a *pro se* motion complaining of a speedy-trial violation.

¶ 42    We remain mindful that the *Williams* rule is meant to prevent the prosecution from ambushing a defendant with additional charges in circumvention of his speedy-trial rights. Where the defense expressly declines to invoke the defendant's right to a speedy trial, never objects to continuances, and ultimately ends up with almost three years to prepare for trial after the latest-filed charges, we can hardly consider this an ambush by the State. See *People v. Whitlock*, 2018 IL App (1st) 152978, ¶ 45 (the defendant could not complain that he was ambushed where he did not seek dismissal on speedy-trial grounds until 3 ½ years after he was reindicted and where he had almost five years to prepare for trial). Defendant acquiesced to all delays in this case, and he does not argue that his counsel was ineffective for requesting or failing to object to continuances.

¶ 43    Even if defendant had not acquiesced to all delays, the first-degree murder and home invasion charges added on November 18, 2015, were not "new and additional" for purposes of the *Williams* rule. Whether a charge is "new and additional" is a legal question that we review *de novo*. *Phipps*, 238 Ill. 2d at 67. Our analysis requires us to compare the original charges with the subsequent charges to determine whether defendant had adequate notice of the subsequent charges to allow him to prepare a defense. *Phipps*, 238 Ill. 2d at 67.

¶ 44     In the original indictment dated October 28, 2015, the State charged defendant with three counts of first-degree murder. Each count alleged that, on or about September 27, 2015, defendant, without lawful justification, shot Beata in the body with a firearm. Count I alleged that defendant acted with the intent to kill or to do great bodily harm to Beata. Count II alleged that defendant knew that his acts would cause Beata's death. Count III alleged that defendant knew that his acts created a strong probability of death or great bodily harm to Beata.

¶ 45     On November 18, 2015, the State charged defendant with eight more counts. We focus primarily on count V, as it was the only count on which defendant ultimately was sentenced. In this count, the State alleged first-degree murder under a felony-murder theory. Specifically, the State alleged that, on or about September 27, 2015, defendant, without lawful justification and while committing the offense of home invasion as set forth in count IX, shot a firearm into the body of Beata, thereby causing her death. In turn, count IX alleged that, on or about September 27, 2015, "defendant, who was not a peace officer acting in the line of duty, knowingly, and without authority, entered the dwelling place of Beata Brocksom, *** having reason to know that one or more persons was present within that dwelling place and, intentionally[,] caused an injury to Beata Brocksom, a person within the dwelling."

¶ 46     In considering whether counts V and IX of the indictment constituted "new and additional" charges, we find guidance in *People v Mays*, 2012 IL App (4th) 090840. In *Mays*, the State originally charged the defendant with three counts of first-degree murder for the death of one individual. *Mays*, 2012 IL App (4th) 090840, ¶ 6. Specifically, count I alleged that the defendant acted with intent to kill or to do great bodily harm, count II alleged that the defendant knew that his acts could cause death, and count III alleged that the defendant knew that his acts created a strong probability of death or great bodily harm. *Mays*, 2012 IL App (4th) 090840, ¶ 6. The

defendant's attorney subsequently wrote the prosecutor a letter identifying the defense's theory of the case. *Mays*, 2012 IL App (4th) 090840, ¶ 9. In that letter, defense counsel made statements that the prosecutor deemed " 'tantamount to a confession to a felony murder.' " *Mays*, 2012 IL App (4th) 090840, ¶ 10. Accordingly, on the first day of trial, over defense counsel's objection, the State filed three additional charges against the defendant: one count of home invasion and two counts of first-degree murder under a felony-murder theory predicated on home invasion. *Mays*, 2012 IL App (4th) 090840, ¶ 10-11. Those charges each related to the same incident as the three original charges. *Mays*, 2012 IL App (4th) 090840, ¶ 1. After the proofs were closed at trial, the State abandoned the original three charges of first-degree murder and elected to proceed only on the three charges filed at the beginning of trial. *Mays*, 2012 IL App (4th) 090840, ¶ 34. The jury found the defendant guilty of first-degree murder and home invasion, and the court sentenced the defendant to 60 years' imprisonment for first-degree murder. *Mays*, 2012 IL App (4th) 090840, ¶¶ 35, 37.

¶ 47     On appeal, the defendant invoked the *Williams* rule in support of his argument that his conviction of charges that were filed on the day of trial violated his statutory right to a speedy trial. *Mays*, 2012 IL App (4th) 090840, ¶¶ 40-41. The appellate court rejected this argument for two reasons. The first reason was that "the notion that defendant was guilty of felony murder (as opposed to the murder counts originally charged) and home invasion arose from the defendant's own counsel's communication with the State." *Mays*, 2012 IL App (4th) 090840, ¶ 50. In the court's view, "[i]f felony murder based on a home invasion was [defense counsel's] theory of the case, as he so advised [the prosecutor] in writing, we cannot presume he was later surprised when the State agreed with him and filed the additional murder and home-invasion charges." *Mays*, 2012 IL App (4th) 090840, ¶ 50. The second reason why the court rejected the defendant's argument

was that the "defendant, who was originally charged with the act of murder, was not prejudiced by a subsequent conviction for felony murder." *Mays*, 2012 IL App (4th) 090840, ¶ 51. As the court explained:

> " 'Illinois law recognizes only a single offense of murder, which may be committed in a variety of ways. Just as the method of committing murder is not integral to the offense and therefore need not be specified in the charging instrument [citation] * * *, the precise statutory theory of the offense of murder is not a matter that must be specifically alleged.' "
> *Mays*, 2012 IL App (4th) 090840, ¶ 51 (quoting *People v. Maxwell*, 148 Ill.2d 116, 137 (1992)).

Thus, the court concluded that the defendant "had timely notice of the felony-murder charge and cannot reasonably argue surprise when his own lawyer suggested it." *Mays*, 2012 IL App (4th) 090840, ¶ 52. The court held that "the newly filed felony-murder and home-invasion charges did not violate defendant's right to a speedy trial because, under the facts of this case, those charges could not reasonably be considered 'new and additional' for the purposes of a speedy-trial analysis." *Mays*, 2012 IL App (4th) 090840, ¶ 53.

¶ 48    Under the reasoning of *Mays*, counts V and IX of the indictment here were not "new and additional" charges. The original indictment charged defendant with first-degree murder, so he was on notice that he could stand trial for such offense under any theory recognized under Illinois law. See also *Whitlock*, 2018 IL App (1st) 152978, ¶ 42 ("The change in murder theory between the two indictments is of no consequence because the original indictment placed [the defendant] on notice that he could be tried for murder under any of the three murder theories recognized in Illinois."). As the court explained in *Mays*, the fact that the State subsequently changed its theory

of why defendant committed first-degree murder does not render the charges "new and additional" for speedy-trial purposes.

¶ 49 Admittedly, *Mays* contained an unusual fact that is not present here. Defense counsel in *Mays* sent the prosecutor a letter that prompted the State to pursue a felony-murder theory. Accordingly, the court in *Mays* considered this fact as part of its analysis of whether the defendant suffered prejudice or surprise from the charges that were filed on the day of trial. The absence of this fact, however, does not mean that counts V and IX here either surprised or prejudiced defendant. The State filed counts V and IX not on the morning of trial but merely 52 days after defendant's arrest.

¶ 50 Defendant analogizes his circumstances to *People v. Boyd*, 363 Ill. App. 3d 1027 (2006), but that case is distinguishable. As we noted in *Dryer*, the parties in *Boyd* agreed that the subject charges were "new and additional," so the *Boyd* court did not address that issue. *Dryer*, 2021 IL App (2d) 190187, ¶ 29. *Boyd* is further distinguishable because it did not involve a defendant who requested and acquiesced to continuances for three years after the State added charges against him.

¶ 51 III. CONCLUSION

¶ 52 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 53 Affirmed.